

# In the Missouri Court of Appeals
# Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| BRIAN WHITE, | ) | No. ED113099 |
| | ) | |
| Respondent, | ) | |
| | ) | Appeal from the Labor and Industrial |
| vs. | ) | Relations Commission |
| | ) | |
| TREASURER OF THE STATE OF | ) | |
| MISSOURI AS CUSTODIAN OF THE | ) | |
| SECOND INJURY FUND, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 17, 2025 |

### Opinion

The Treasurer of the State of Missouri, as Custodian of the Second Injury Fund (SIF), appeals from the Labor and Industrial Relations Commission's (Commission) award of permanent total disability (PTD) benefits to Brian White (White) for his November 2020 chest injury in combination with disabilities resulting from White's preexisting occupational shoulder disease. The sole question before us is whether occupational diseases satisfy the preexisting disability requirement for SIF liability under § 287.220.3(2)(a)a(ii).[1] During the pendency of this appeal, the Supreme Court of Missouri decided occupational diseases are not compensable under this section of the statute and therefore are not covered by SIF. *Treasurer of State v.*

---

[1] All Section references are to RSMo (2016), unless otherwise noted. Section 287.220 has since been amended with no changes to the subsections relevant to this appeal.

*Penney*, 710 S.W.3d 498 (Mo. banc 2025).[2]  Accordingly, we reverse and remand for further proceedings consistent with this opinion.

<u>Background</u>

From May 2007 to December 2020, White worked as a distribution field worker for Missouri American Water (MAW).  White's responsibilities involved mostly intensive manual labor, which included tasks such as regularly lifting objects around 40 to 100 pounds, digging by hand, climbing atop ladders, and walking long distances to stretch up to 1,000 feet of hose.  Throughout his career, White has suffered several work-related injuries.  Relevant to resolving the narrow issue before us are White's 2010 shoulder injuries and 2020 chest injury.

In October 2010, White suffered a work-related injury to his shoulders, which was deemed to be an occupational disease under the Missouri's Workers' Compensation Act (Act).  White filed a worker's compensation claim for his shoulders and settled with MAW for 23% permanent partial disability (PPD) to each shoulder or 106.72 weeks of disability in total.  In addition to this shoulder injury, White has received worker's compensation for numerous other work-related injuries throughout the years, including but not limited to injuries to his neck, back, wrists, and knees.  Although evidence of these prior compensable injuries— compensable in the sense that White received worker's compensation benefits for them —is contained in the record, the Commission did not make findings as to whether these injuries were statutorily sufficient to trigger SIF liability.

In 2020, White injured his chest while working with an overhead load spring on an industrial vacuum truck.  White filed a worker's compensation claim for this chest injury and MAW settled for 12.5% PPD disability.  As a result of these particular work-related injuries,

---

[2] The Supreme Court also heard a similar issue in *Eckardt v. Treasurer of Missouri*, 710 S.W.3d 523 (Mo. banc 2025).  However, the Supreme Court decided that case on different grounds.  *See id.* at 528–31.

White sought compensation from SIF for PTD and proceeded to a hearing before an administrative law judge (ALJ).

The ALJ determined SIF was liable for PTD benefits to White. To reach this determination, the ALJ made two findings. First, the ALJ held White had a qualifying preexisting disability equal to at least 50 weeks of disability with his 2010 shoulder injury. Second, the ALJ found White suffered a subsequent compensable work-related injury or a primary injury with his 2020 chest injury. The ALJ reasoned these injuries together resulted in PTD pursuant to § 287.220.3(2)(a)b, and as such created SIF liability.

SIF appealed to the Commission on multiple grounds. Specifically relevant to this appeal, SIF claimed the ALJ improperly found White's 2010 injury to his shoulders constituted a preexisting disability under § 287.220.3(2)(a)a(ii). Instead, SIF argued that the 2010 shoulder injuries were occupational diseases, and that § 287.220.3(2)(a)a(ii) excludes occupational diseases from compensation. The Commission rejected this statutory interpretation and affirmed the ALJ's award of PTD benefits to White. Specifically, the Commission stated "[i]n the absence of controlling case law instructing otherwise, we reaffirm our position that a medically documented compensable occupational disease disability of greater than fifty weeks may qualify as a preexisting disability for purposes of [SIF] liability under § 287.220.3(2)(a)a(ii).". SIF now appeals.

Standard of Review

Our standard of review of the Commission's award is set by statute.

The [C]ourt, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:
(1) That the commission acted without or in excess of its powers;
(2) That the award was procured by fraud;
(3) That the facts found by the commission do not support the award;

3

> (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495.1. "This Court reviews the Commission's findings to determine if they are supported by competent and substantial evidence upon the whole record, but questions of statutory interpretation are questions of law reviewed *de novo*." *Treasurer of State v. Parker*, 622 S.W.3d 178, 180–81 (Mo. banc 2021) (internal quotation omitted).

Discussion

In its sole point on appeal, SIF contends the Commission improperly interpreted § 287.220.3(2)(a)a(ii) to allow occupational diseases to qualify as a preexisting disability triggering SIF liability. Given the Supreme Court's recent holding, we agree. Specifically, the Supreme Court decided occupational diseases are not compensable under § 287.020, therefore occupational diseases cannot satisfy the preexisting disability requirement for purposes of creating SIF liability under § 287.220.3(2)(a)a(ii). *Penney*, 710 S.W.3d at 503. We apply the Supreme Court's ruling to the case at bar, but first we explain how an employee creates SIF liability.

To create SIF liability under § 287.220.3, an employee must meet two requirements. *Parker*, 622 S.W.3d at 181. "First, the employee must have **at least** one qualifying preexisting disability." *Id.* (citing § 287.220.3(2)(a)) (emphasis in original). "To qualify under the first condition, the preexisting disability must be medically documented, equal at least 50 weeks of permanent partial disability, and meet one of [four] criteria." *Id.* The only criteria presented to us in this appeal is the second criteria, which states a preexisting disability can be "[a] direct result of a ***compensable injury as defined in section 287.020***." § 287.220.3(2)(a)a(ii) (emphasis added).

4

Section 287.020 defines injury as "an injury which has arisen out of and in the course of employment" that caused "violence to the physical structure of the body and to the personal property which is used to make up the physical structure of the body." § 287.020.3(1), (5), RSMo (Cum. Supp. 2018). This section allows accidental injuries to be compensable "only if the accident was the prevailing factor in causing both the resulting medical condition and disability." § 287.020.3(1), RSMo (Cum. Supp. 2018). However, this section also states "[t]hese terms shall *in no case* except as specifically provided in this chapter be construed to *include occupational disease* in any form[.]" § 287.020.3(5), RSMo (Cum. Supp. 2018) (emphasis added). An occupational disease is "an identifiable disease arising with or without human fault out of and in the course of employment . . . and to have flowed from [employment] as a rational consequence." § 287.067.1.[3] To satisfy the second condition, the employee must then show he "thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability . . . results in a permanent total disability . . . ." *Parker*, 622 S.W.3d at 181 (quoting § 287.220.3(2)(b)). Parties and courts often refer to subsequent compensable work-related injuries as primary injuries. *Id.* Upon establishing both requirements, an employee becomes entitled to PTD benefits from SIF. *Id.*

White asserts the Commission properly applied § 287.220.3(2)(a)a(ii) when determining his 2010 shoulder injuries were a compensable qualifying preexisting disability. If White's interpretation is correct, then he would proceed to the second step of establishing SIF liability. If his shoulder injuries or any other prior injury did not qualify as a preexisting disability, then he fails the first step of creating SIF liability. In their briefing, both parties agreed *Penney* would decide this case, and SIF notified this Court of *Penney*'s decision during the pendency of

---

[3] The legislature amended this section in 2023 but the definition of occupational disease did not change.

5

this appeal. The Supreme Court definitively held occupational diseases cannot serve as qualifying preexisting disabilities under § 287.220.3(2)(a)a(ii) because they are not compensable injuries under § 287.020. *Penney*, 710 S.W.3d at 503.

In reaching this decision, the Supreme Court reasoned the legislature sought to limit SIF liability when it amended the Act in 2005, "indicating a legislative intent 'to divorce the compensability of occupational disease claims from . . . the statutory provisions which define 'accident' and 'injury.'" *Id.* at 501 (internal quotation omitted). "The 2005 amendments, therefore, delineated two different types of 'compensable injuries' each with their own scheme to determine compensability—injuries by accident as defined in [§] 287.020 and injuries by occupational disease as defined in [§] 287.067." *Id.* (internal citation omitted).

In 2013, the legislature again amended the statutes creating subsection 3 of § 287.220, which established the two requirements an employee must meet to create SIF liability. *Id.* (internal citation omitted). These amendments sought to limit the number of workers eligible for SIF funds as SIF faced insolvency. *Id.* Turning to § 287.020, the Supreme Court found the legislature clearly excluded occupational diseases from compensable injuries with the language: "[t]hese terms shall in no case except as specifically provided in this chapter be construed to include occupational disease in any form." *Id.* at 502.

This interpretation led the Supreme Court to reverse the Commission's award of PTD benefits to the pharmacy technician employee in *Penney*, who claimed occupational diseases as qualifying preexisting disabilities. *Id.* at 503. Here, like the employee in *Penney*, White relied upon an occupational disease to serve as his qualifying preexisting disability. *See id.* Given that occupational diseases are not compensable injuries under § 287.020 and cannot serve as a

6

qualifying preexisting disability under § 287.220.3(2)(a)a(ii), White fails the first requirement of establishing SIF liability.

We therefore find the Commission erred as a matter of law, by making its award in excess of its powers under § 287.495.1(1). We grant the appeal. Because the record contains evidence of other prior work-related injuries, that do not necessarily implicate *Penney*, and may trigger SIF liability, we remand the case for further proceedings.

Conclusion

The Commission's decision is reversed and remanded for the Commission to consider whether there is any SIF liability under any combination of qualifying preexisting disabilities pursuant to any provision of § 287.220.3(2)(a)a(i)–(iv).

_Rebeca Navarro-McKelvey_
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.

7